Index No. 23 Civ. 5531 (LAK) (OTW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE RODRIGUEZ,

Plaintiff,

-against-

CITY OF NEW YORK,

Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED R. CIV. P. 12(C)**

*MURIEL GOODE-TRUFANT*
*Acting Corporation Counsel of the City of New York*
*Attorney for defendant City of New York*

*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Amy Robinson*
*Tel:  (212) 356-3518*
***Matter No. 2023-050943***

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 1

BACKGROUND—NEW YORK ARTICLE 18-b ATTORNEYS ................................. 3

     Screening And Oversight Of 18-b Panel Attorneys ............................................ 5

     City's Role In The Indigent Defense System Under State Law And The 1966 Bar Plan .... 7

MOTION TO DISMISS STANDARD ............................................................................ 8

ARGUMENT

     POINT I

          PLAINTIFF'S CLAIMS AGAINST DEFENDANT CITY OF NEW YORK SHOULD BE DISMISSED BECAUSE THEY ARE TIME-BARRED ............................................................................. 11

     POINT II

          PLAINTIFF FAILED TO ADEQUATELY PLEAD A MONELL CLAIM AGAINST THE CITY OF NEW YORK .......................................................... 12

          A. Plaintiff Fails To Adequately Plead A Custom Or Practice Of The City Of New York In Allegedly Failing To Supervise Private Court-Appointed 18-b Panel Attorneys ....................................... 12

          B. Plaintiff Fails To Adequately Plead That The City Acted With Deliberate Conduct Which Was The Moving Force Behind Any Of Plaintiffs Constitutional Violations .................................. 16

CONCLUSION ............................................................................................................... 20

**TABLE OF AUTHORITIES**

**Cases**                                                                                               **Pages**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...........................................................................................................8, 9

*Bd. of Cty. Comm'rs of Bryan Cty. v. Brown,*
   (emphasis in the original)..............................................................................................12

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...........................................................................................................8, 9

*Caravalho v. City of New York,*
   2016 U.S. Dist. LEXIS 44280
   (S.D.N.Y. Mar. 31, 2016) ..............................................................................................19

*City of Los Angeles v. Heller,*
   475 U.S. 796 (1986)..........................................................................................................19

*Connolly v. McCall,*
   254 F.3d 36 (2d. Cir. 2001)............................................................................................11

*Douglas v. California,*
   372 U.S. 353 (1963)...........................................................................................................4

*Gideon v. Wainwright,*
   372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963)...................................3, 4, 8, 15

*Global Network Commc'ns, Inc. v. City of New York,*
   458 F.3d 150 (2d Cir. 2006)...........................................................................................10

*Halebian v. Berv,*
   644 F.3d 122 (2d Cir. 2011)...........................................................................................10

*Harper v. City of New York,*
   424 F. App'x. 36 (2d Cir. 2011) ....................................................................................12

*Harris v. Mills,*
   572 F.3d 66 (2d Cir. 2009).............................................................................................9

*Hayden v. Paterson,*
   594 F.3d 150 (2d Cir. 2010)............................................................................................8

*Hogan v. Fischer,*
   738 F.3d 509 (2d Cir. 2013)...........................................................................................11

*Kramer v. Time Warner Inc.,*
   937 F.2d 767 (2d Cir. 1991)...........................................................................................10

**Cases**                                                                                **Pages**

*Lynch v. City of New York*,
952 F.3d 67 (2d Cir. 2020)................................................................8, 9

*Mathis v. Hood*,
1990 WL 100869 (SDNY 1990)................................................................18

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007)................................................................10

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658, 98 S. Ct. 2018,
56 L. Ed. 2d 611 (1978)................................................................12, 19

*Matter of New York County Lawyers Assn. v. Bloomberg*,
979 N.E.2d 1162 (N.Y. 2012)................................................................7

*Owens v. Okure*,
488 U.S. 235 (1989)................................................................11

*Paulin v. City of Beacon*,
No. 17-CV-5105 (KMK), 2019 U.S. Dist. LEXIS 154265
(S.D.N.Y. Sep. 10, 2019)................................................................16

*Pearl v. City of Long Beach*,
296 F.3d 76 (2d Cir. 2002)................................................................11

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*,
712 F.3d 705 (2d Cir. 2013)................................................................9

*People v. Rodriguez*,
199 AD3d 469 (1st Dept. 2021)................................................................2

*Polk Cty. v. Dodson*,
454 U.S. 312 (1981)................................................................13, 15, 16

*Reyes v. Cnty. of Suffolk*,
995 F. Supp. 2d 215 (E.D.N.Y. 2014) ................................................................12

*Simmons v. Reynolds*,
898 F.2d 865 (2d Cir. 1990)................................................................18

*Soares v. State of N.Y.*,
121 N.Y.S.3d 790 (N.Y. Sup. Ct. 2020) ................................................................13

*Vippolis v. Vill. of Haverstraw*,
768 F.2d 40 (2d Cir. 1985)................................................................12

**Statutes**                                                                **Pages**

22 NYCRR 612.0 et seq...............................................................................................7

22 NYCRR § 612.8.....................................................................................................7

22 NYCRR § 678.1 et seq..........................................................................................7

42 U.S.C. §1983.......................................................................1, 11, 12, 15, 16

Fed. R. Civ. P. 12(b)(6)............................................................................................8

Fed. R. Civ. P. 12(c) ...................................................................................1, 8, 10

Fed. R. Evid. 201(b)(2) ..........................................................................................10

N.Y. C.P.L.R. § 214...............................................................................................11

NY CLS Jud. § 90..................................................................................................13

NY County Law § 722........................................................................................4, 5, 7

NY County Law § 722(3) .........................................................................................5

NY County Law § 722(3)(c) .....................................................................................4

NY County Law § 722(4) .........................................................................................4

NY County Law § 722, et seq...................................................................................4

## PRELIMINARY STATEMENT

Plaintiff Jose Rodriguez brings this untimely action pursuant to 42 U.S.C. §1983 against defendant the City of New York, ("City") alleging that the City deprived him of his constitutional rights because his court-appointed appellate attorney failed to perfect his appeal of his criminal convictions. Plaintiff brings a municipal liability claim on a theory that plaintiff's Sixth and Fourteenth Amendment rights were violated due to the alleged failure of the City of New York. However, the amended complaint is insufficiently plead to demonstrate any liability of the City. Accordingly, defendant hereby submits this Memorandum of Law in support of its motion to dismiss pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

On April 2, 1982, following trial, a jury found plaintiff guilty of two counts of attempted murder and one count criminal possession of a weapon in the second degree. (Amended Complaint, (Ex. B, ¶ 12 to Declaration of Amy Robinson, (hereinafter "Robinson Decl.")). On April 21, 1982, plaintiff was sentenced to twenty years to life in prison. (Ex. B, ¶ 14). Plaintiff's trial counsel fought for Mr. Rodriguez, lodged proper objections and moved to dismiss the case for insufficient evidence. (Ex. B, ¶ 16).

Following his conviction, plaintiff timely filed a Notice of Appeal, and William E. Hellerstein, Esq., was assigned to represent plaintiff in his appeal. (Ex. B, ¶ 18). However, Mr. Hellerstein moved to be relieved, which the court granted in February 1983. *Id.* Plaintiff's new appellate counsel, Thomas P. Burke, Esq, was assigned and was given an extra 120 days to perfect plaintiff's appeal. *Id.*

The New York County District Attorney's Office (Appeals Bureau) accurately reflected Burke's appointment on plaintiff's "file card," but it inaccurately reflected that plaintiff's appeal was affirmed on May 17, 1983. (Ex. B, ¶ 19). The reason why this is

inaccurate is because the New York County District Attorney's Office listed the affirmance of a different "Jose Rodriguez" on plaintiff's file card.  *Id.*  Burke, however, never took any steps to proceed with the appeal, and in 2004 he was suspended for delinquency in perfecting appeals; in 2008 he was suspended from the practice of law for neglecting his duties and ultimately disbarred in 2009.  (Ex. B, ¶¶ 21-25).

       In 2014, plaintiff first realized, with the help of a fellow inmate, that his appeal was not perfected.  (Ex. B, ¶ 28).  Plaintiff realized the problem and immediately filed a pro se *coram nobis* petition on or about April 16, 2014.  *Id.*  The District Attorney of New York County opposed plaintiff's application.  (Ex. B, ¶ 29).  The District Attorney argued, amongst other things, that court records indicate that plaintiff's appeal was perfected as referenced in his file card.  (Ex. B, ¶ 29).  Specifically, the District Attorney argued that court records showed that the court appointed Mr. Burke to represent plaintiff and that on May 17, 1983, the Court affirmed defendant's conviction.  (Ex. B, ¶ 30.)  The Court denied plaintiff's application on the grounds that court records reflected that plaintiff had perfected his appeal.  (Ex. B, ¶ 32).

       In or around 2016-2017, an investigation by the New York State Attorney General's office revealed that plaintiff's appeal was never perfected.  (Ex. B, ¶ 34).  As a result of the investigation, on February 16, 2017, the court recalled and vacated its prior order denying the petition.  (Ex. B, ¶ 34).

       On November 9, 2021, the Supreme Court, Appellate Division, issued an order in the appeal finding that plaintiff had been denied his Sixth Amendment right to counsel.  *See People v. Rodriguez*, 199 AD3d 469 (1st Dept. 2021).  (Decision, Ex. C to Robinson Decl.).  In its two-page order and opinion, the court held that plaintiff was "deprived of his right to a meaningful appeal in light of the undisputedly extraordinary delay of nearly 40 years in

perfecting his appeal." *Id.* at 470. The court further stated that plaintiff's appellate attorney "took no steps to perfect an appeal, to ask to be relieved, or to communicate with defendant." *Id.* Contrary to plaintiff's allegations in the amended complaint, the Court in no way granted plaintiff's appeal based on "the City of New York's unconscionable failure." (*See cf.* Ex. B, ¶ 7). Indeed, the Court made no remarks whatsoever regarding any role, involvement, action, or inaction of the City, or otherwise mention the City. (*See*, Ex. C). Rather, the court determined that "the inadequate, nonexistent, representation by [plaintiff's] prior assigned counsel has deprived [plaintiff] of his constitutional rights." *Id.* at 471. As a remedy, the Court ruled that, "in these extraordinary circumstances, plaintiff's charges, although serious, should be dismissed." *Id.* There is nothing in the opinion to indicate any failure by the City.

On May 2, 2023, plaintiff initiated the instant action seeking civil damages against the City of New York, and the New York County District Attorney's Office, amongst other defendants. (Complaint, Ex. A to Robison Decl.) Defendants thereafter removed the action to federal court. (Dkt. No. 1). On December 8, 2023, plaintiff filed an amended complaint wherein plaintiff removed all defendants with the exception of the City. (Ex. B).

### BACKGROUND—NEW YORK ARTICLE 18-B ATTORNEYS

Plaintiff alleges that defendant City of New York deprived plaintiff of his rights under the Sixth and Fourteenth Amendments to the United States Constitution to adequate appellate counsel. The right to assistance of counsel is guaranteed by the Sixth Amendment, which provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." *See Gideon v. Wainwright*, 372 U.S. 335, 342, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963) (holding that the Sixth Amendment's guarantee of the assistance of counsel "is made obligatory upon the States by the Fourteenth Amendment"). Further, the Sixth

Amendment applies to a defendant's first appeal as of right. *Douglas v. California*, 372 U.S. 353 (1963).

In response to the *Gideon* decision, in 1965, the New York state legislature enacted Article 18-b of the New York County Law. *See* NY County Law § 722, et seq. ("Article 18-b"), Ex. [] to Robinson Decl. Under § 722 of Article 18-b, the state placed upon each county or city the requirement to "place in operation through the county a plan for providing counsel to persons charged with a crime … who are financially unable to obtain counsel." NY County Law § 722. Section 722 further provided the plan adopted by a local government should conform with one of the three options, or a combination thereof: "(i) the services of private counsel are rotated and coordinated by an administrator, and such administrator may be compensated for such service; or (ii) such representation is provided by an office of conflict defender." § 722(3)(c). If a local government does not adopt a plan, then "the judge . . . may assign any attorney in such . . . city." § 722(4).

In 1965, several New York City bar associations (hereinafter "the bar associations") jointly issued a proposed plan for indigent defense that would comply with Article 18-b. (Plan of the Association of the Bar of the City of New York, Bronx County Bar Association, Brooklyn Bar Association, New York County Lawyers' Association, Queens County Bar Association and Richmond County Bar Association, Published by the Administrator of the First Department Plan (1967) (hereinafter "1966 Bar Plan" or "Plan"), Ex. D to Robinson Decl.). Under the 1966 Bar Plan, the bar associations proposed that the City should adopt a combination of the options under § 722. Specifically, the 1966 Bar Plan proposed that a private legal aid society would primarily be designated to furnish representation, and in the case where

the legal aid society encountered a conflict in representation, the court would appoint counsel from a panel of attorneys. *See Id.*

In November 1965, then Mayor Robert F. Wagner, Jr., issued New York City Executive Order No. 178 formally adopting a combined plan as proposed by the bar associations and in conformity with County Law § 722. (Executive Order No. 178 (November 27, 1965), Ex. E to Robinson Decl.). By Executive Order No. 178, Mayor Wagner designated the Legal Aid Society of the City of New York (LAS) "to furnish counsel to persons within the City of New York charged with a crime . . . who are financially unable to obtain counsel," with the terms of LAS's provision of such services to be detailed in a subsequent agreement between LAS and the City. *See Id.* Executive Order 178 also provided that "[i]n those cases where by reason of a conflict of interest or other appropriate reason . . . [LAS] declines to represent any such defendant, such defendant shall be represented by counsel furnished pursuant to the joint plan of the Association of the Bar of the City of New York and the New York County Lawyers' Association . . . provided that such joint plan is approved by the Judicial Conference of the State of New York," as required by County Law § 722(3). *Id.*

On April 23, 1966, the Judicial Conference of the State of New York approved the 1966 Bar Plan and was henceforth adopted as the City's plan for indigent defense in the City of New York. (Ex. D, (noting approval and adoption). Thus, pursuant to § 722, courts within the City were required to assign counsel in accordance with the approved 1966 Bar Plan.

**Screening And Oversight Of 18-b Panel Attorneys**

The 1966 Bar Plan provided the process by which an indigent defendant would be furnished with representation if LAS was not available or had a conflict. Specifically, the 1966 Bar Plan provided that the court may "assign and appoint one or more of the attorneys listed in the panel of trial attorneys available for services in the Supreme Court in the County." The

5

process by which attorneys may be listed in the panel of trial attorneys available for appointment under the plan was provided under Article IV of the 1966 Bar Plan.

Appointment onto the panel of trial attorneys available for assignment (hereinafter "18-b Panel") consisted of a two-part process. First, "[e]ach bar association" was required to prepare and certify to the appropriate Administrator, "a list of attorneys who are admitted to practice in the State of New York and who, in the opinion of the bar association . . . are competent to give adequate representation of defendants under Article 18-b of the County Law." In determining whether an attorney was competent, the bar associations were required to consider the attorneys' experience in criminal practice. Additionally, the Plan required a minimum of seven years of legal experience and "substantial experience in the trial of criminal cases," before the attorney [could] be appointed for service as trial counsel in the Supreme Court. (Ex. D, § II ("Panel of Attorneys")).

Once the list of attorneys was prepared, under the second part of the process, Administrators for the Appellate Divisions of the First and Second Judicial Departments were required to prepare and maintain panels of attorneys who may be appointed to Supreme Court or Criminal Court cases on a rotating basis. (Ex. D, § III ("The administrator or Administrators")). The Administrators, who were individuals appointed by the Appellate Divisions of the First and Second Judicial Departments, prepared panels of attorneys, from the list provided by the bar associations, and maintained separate panels for Supreme Court cases, Criminal Court cases and the Appellate Division. *Id.* When a court determined that a defendant was entitled to counsel and that LAS may not represent that defendant, then the Administrator was to rotate through the list of panel attorneys to find an attorney available for assignment. *Id.*

6

While the 1966 Bar Plan did not provide specific rules regarding supervision of 18-b panel attorneys, it did state that the Appellate Divisions may promulgate rules as necessary. (Ex. D, § VIII ("Rules and Reports")).

Specifically, the Plan stated that the "Appellate Divisions of the First and Second Judicial Departments may promulgate such rules with respect to this Plan as they may deem necessary." Id. Pursuant to that authority, the Appellate Divisions did just that. In 1980 and 1991, the First and Second Judicial Department adopted new rules, which the bar associations approved, "whereby committees designated by the Appellate Division would perform the function of screening attorneys for the 18-b panels." *See Matter of New York County Lawyers Assn. v. Bloomberg*, 979 N.E.2d 1162, 1165 (N.Y. 2012) (citing to 22 NYCRR 612.0 et seq., 678.1 et seq.). In 1980, in addition to rules regarding screening attorneys, the Appellate Divisions also promulgated rules requiring the bar associations to "provide a continuing program of training and education [for panel attorneys], which will allow panel attorneys to improve their professional competence in criminal law." NY CLS Rules Sup Ct § 612.8.

**City's Role In The Indigent Defense System Under State Law And The 1966 Bar Plan**

Under the 1966 Bar Plan, the City was required to compensate private attorneys who provided services pursuant to the Plan. The rate of compensation for panel attorneys was fixed by state law, *See* County Law § 722, while the "compensation and reimbursement "for appellate attorneys was "fixed by the appellate court," (Ex. D, Article VI). Attorneys were required to submit claims for attorney's fees, expenses and service to the court. The clerk of the court then forwarded all approved statements to the appropriate Administrator, who then forwarded them to the comptroller of the City of New York for payment.

The City's Office of Management and Budget ("OMB") and the Mayor's Criminal Justice Coordinator were the City agencies "most involved in setting policies over

criminal defense services."  Michael McConville & Chester L. Mirsky, *Criminal Defense of the Poor in New York City* 892 (1989).  In particular, these offices negotiated the City's annual contract with LAS, gave effect to the City administration's concerns for low cost, and ensured the indigent defense system functioned efficiently with due regard for the interest of police, prosecution, and corrections.  *Id.*

As this discussion illustrates, the City played an extremely limited role with regard to actual representation of indigent clients.  *Gideon* placed the duty to ensure representation of indigent individuals upon the state, while under 1966 Bar Plan, (implemented pursuant to state law), the responsibility of screening and selecting attorneys was borne by both the bar associations and the Judicial Departments, with the court-appointed Administrators overseeing assignment and rotation of panel attorneys.  (Ex. D, Article IV).

## MOTION TO DISMISS STANDARD

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (internal quotations and citations omitted).  "To survive a 12(c) motion, the plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (internal quotations and citations omitted).  The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal conduct." *Lynch*, 952 F.3d at 82 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 662 (2009).

8

In making this assessment, the court draws all reasonable inferences in the plaintiff's favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The court also "accepts all 'well-pleaded factual allegations' in the complaint as true." *Lynch*, 952 F.3d at 74-75 (quoting *Iqbal*, 556 U.S. at 679). However, "[a] court is not bound to accept as true a pleading's legal conclusions." *Lynch*, 952 F.3d at 75 (quoting *Iqbal*, 556 U.S. at 681). "[N]aked assertions devoid of further factual enhancement[s]" are insufficient for a pleading to survive a motion to dismiss. *Twombly*, 550 U.S. at 557. Similarly, "unadorned, the-defendant-unlawfully-harmed-me accusations" will not suffice. *Iqbal*, 556 U.S. at 678. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions …. A formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

As noted by the Court in *Iqbal*, modern liberal pleading standards should not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678. Indeed, the Second Circuit cautioned that the high burden of discovery, "elevates the possibility that a plaintiff with a largely groundless claim will simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value, rather than a reasonably founded hope that the discovery process will reveal relevant evidence." *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 719 (2d Cir. 2013). Notably, the court also observed that the pleading standard, "as interpreted in *Twombly* and *Iqbal*, help[s] to prevent settlement extortion – using discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit." *Id.*

In deciding a 12(c) motion, the court is ordinarily bound to review the factual allegations made within the four corners of the complaint, "documents attached to the complaint as exhibits," and "any documents incorporated in the complaint by reference."  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  However, the court may also consider certain documents outside of the complaint. Specifically, the court "may also properly consider matter of which judicial notice may be taken, or documents either in the plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011).

In taking judicial notice, Fed. R. Evid. 201(b)(2) governs.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).  Under the Federal Rules of Evidence, courts may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questions."  Fed. R. Evid. 201(b)(2).  The Second Circuit has recognized that courts may properly "take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings."  *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings.").

**ARGUMENT**

**POINT I**

**PLAINTIFF'S CLAIMS AGAINST DEFENDANT CITY OF NEW YORK SHOULD BE DISMISSED BECAUSE THEY ARE TIME-BARRED**

Plaintiff's claims against defendant City in the amended complaint are time-barred. While 42 U.S.C. § 1983 does not designate a statute of limitations, courts apply the statute of limitations for personal injury actions under state law. *Owens v. Okure*, 488 U.S. 235, 236 (1989); Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013). Thus, actions filed in New York pursuant to 42 U.S.C. § 1983 are subject to a three-year statute of limitations. N.Y. C.P.L.R. § 214 (McKinney 2013); *Hogan v. Fischer*, 738 F.3d at 517.

"While state law supplies the statute of limitations for claims under 42 U.S.C. § 1983, federal law determines when a federal claim accrues." *Connolly v. McCall*, 254 F.3d 36, 41 (2d. Cir. 2001). The statutory period begins to run when plaintiff knows or has reason to know of the injuries forming the basis of the action. *See Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002).

Here, plaintiff's federal claims against the City accrued on some date in early 2014 when it became apparent to plaintiff that his appeal had never been perfected, and he filed a pro se *coram nobis* petition on or about April 16, 2014. (Ex. B, ¶ 28). And even if the Court were to stretch the date when it became apparent to plaintiff to when the court vacated its order pertaining to the coram nobis petition, plaintiff had at the very latest, until April 16, 2017, to file a claim against the City. Plaintiff filed the Complaint in this matter on May 2, 2023, (Complaint, Ex. A to Robinson Decl.)—more than six years after plaintiff's claims accrued.

As plaintiff was unequivocally outside of Section 1983's clearly defined statute of limitations for his claims against the City of New York, plaintiff's claims must be dismissed.

### POINT II

### PLAINTIFF FAILED TO ADEQUATELY PLEAD A MONELL CLAIM AGAINST THE CITY OF NEW YORK

"Pursuant to the Supreme Court's holding *in Monell v. Dep't of Soc. Servs*., . . . , a municipal entity, like the Defendant in this case, may be held liable under [Section] 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal 'policy or custom.'" *Reyes v. Cnty. of Suffolk*, 995 F. Supp. 2d 215, 224 (E.D.N.Y. 2014) (quoting 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).   In order to impose liability, a plaintiff must "show two basic elements: (1) 'the existence of a municipal policy or custom . . .' and (2) 'a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights.'" *Harper v. City of New York*, 424 F. App'x. 36, 38 (2d Cir. 2011) (summary order) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985).   Moreover, it is not enough for a § 1983 plaintiff to merely identify conduct properly attributable to the municipality.   "The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown,* at 404 (emphasis in the original).

### A.    Plaintiff Fails To Adequately Plead A Custom Or Practice Of The City Of New York In Allegedly Failing To Supervise Private Court-Appointed 18-b Panel Attorneys

Plaintiff alleges that his Sixth and Fourteenth Amendment rights were violated due to the City's failure to supervise private 18-b panel attorneys.  (Ex. B, ¶¶ 1, 2).  Plaintiff specifically alleges that his injury, caused by his court-appointed appellate attorney's failure to perfect his criminal appeal, was due to the City's alleged policy of failing to supervise 18-b panel

appellate attorneys. (Ex. B, ¶¶ 42(a)-(d), 66). In fact, plaintiff's injury was not caused by any policy of the City of New York; plaintiff's injury was caused by the dilatory acts or omissions of his appellate attorney. The work performed by any private attorney, including 18b-panel attorneys performing duties while acting as counsel to their counsel, fall within the traditional functions of a lawyer, as a matter of principle. A specific analogy is to that of public defenders who are, "not amendable to administrative direction," and the constitution compels the government "respect the professional independence" of public defenders discussed *supra*. *Polk Cty. v. Dodson*, 454 U.S. 312, 321-322 (1981).

Moreover, 18-b panel attorneys were specifically subject to the oversight of the courts in which they practiced and the Judicial Departments in which they were admitted to practice law. Additionally, courts in which 18-b panel attorneys practiced were able to observe the competence of such attorneys and had the authority to remove any attorney from the 18-b rotating panels who the court deemed unfit. *See* NY CLS Jud § 90 ("The supreme court shall have power and control over attorneys … and the appellate division of the supreme court in each department is authorized to censure, suspend from practice or remove from office any attorney and counsellor-at-law admitted to practice who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudicial to the administration of justice…"); *see also Soares v. State of N.Y.*, 121 N.Y.S.3d 790, 799 (N.Y. Sup. Ct. 2020) (noting the authority to oversee and discipline attorneys falls within the bailiwick of the judiciary and striking as unconstitutional a state law that gave authority to a state committee to impose discipline on attorneys for violations of the Rules of Professional Conduct).

Hence, a license to practice in an Appellate Division meant that the attorney was required to comply with the rules of professional conduct and other regulations or rules of that division or of the State of New York.

Furthermore, not only was the City's oversight of panel attorneys not required under the law, and indeed discouraged, the 1966 Bar Plan in fact specifically excluded the City from the role of screening, overseeing, or supervising attorneys performing legal functions pursuant to the Plan.  As discussed in detail above, under the 1966 Bar Plan, the responsibility of screening attorneys for the 18-b panel rested on the bar associations and the Judicial Departments.  Specifically, bar associations, which *are wholly independent from* the City, conducted the screening and reviewing of applications for 18-b panel attorneys.  (Ex. D, § III). The Plan Administrator, which the 1966 Bar Plan specifically required, was appointed by the Appellate Division of the First and Second Judicial Departments, which conducted the step of finalizing the list of attorneys to be included on the panel. None of these actions were in the purview of the City of New York at the relevant time.  *Id.* § IV.

Additionally, plaintiff fails to plausibly allege conduct that can be attributed to the City, because 18-b panel attorneys were neither City employees nor agents under the control of the City.  The legal services that 18-b panel attorneys provided were not and could not be subject of oversight by the City.   The 18-b panel attorneys were private attorneys; they were not employees or agents of the City.  The fact that 18-b panel attorneys were not City employees or agents flows from both applicable statutes and established case law.

In addition to state and local law clearly specifying that 18-b panel attorneys were private attorneys and not employees or agents of the City, case law also establishes this fact.  The public defender system is analogous here.  Specifically, the issue of whether court-appointed

14

attorneys may be considered "state actors" was settled by the Supreme Court in *Polk Cty. v. Dodson*, 454 U.S. 312 (1981). In *Polk*, the Court held that court-appointed attorneys performing a "lawyer's traditional functions as counsel to a defendant in a criminal proceeding" do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983." *Id.* at 325. In reaching this conclusion, the Court in *Polk* made two specific findings regarding the relationship between the state and a public defender. The Court stated:

> First, a public defender is not amenable to administrative direction in the same sense as other employees of the State. … [A] defense lawyer is not, and by the nature of his function cannot be, the servant of an administrative superior. Held to the same standards of competence and integrity as a private lawyer, a public defender works under canons of professional responsibility that mandate his exercise of independent judgment on behalf of the client. A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services.
>
> Second, and equally important, it is the constitutional obligation of the State to respect the professional independence of the public defenders whom it engages. This Court's decision in [*Gideon*] established the right of state criminal defendants to the guiding hand of counsel at every step in the proceedings against them. Implicit in the concept of a guiding hand is the assumption that counsel will be free of state control. There can be no fair trial unless the accused receives the services of an effective and independent advocate.

*Polk*, 454 U.S. at 321-22.

Based on these findings, the Court in *Polk* dismissed the claims against the municipality that were based on the plaintiff's court-appointed attorney's actions, specifically the attorney's decision not to pursue an appeal after determining that it was frivolous.

*Polk* squarely addresses the issue of the City's liability in the instant case. Here, plaintiff's alleged Sixth and Fourteenth Amendments deprivations were caused by his appellate attorney's failure to perfect plaintiff's appeal. In other words, plaintiff's claim arises from his

"lawyer's traditional functions as counsel" to defend his criminal appeal. While in the instant case, unlike *Polk*, the claim is based on plaintiff's attorney's neglect of plaintiff's case, rather than a deliberate decision regarding a legal strategy, *Polk* is still applicable, because the duty to perfect plaintiff's appeal was a professional duty that the attorney owed to his client. *See Paulin v. City of Beacon*, No. 17-CV-5105 (KMK), 2019 U.S. Dist. LEXIS 154265, at *25 (S.D.N.Y. Sep. 10, 2019) (finding that plaintiff's § 1983 claim based on his attorney's neglect in perfecting plaintiff's appeal, was "unmistakably base[d]" on his lawyer's "performance of 'a lawyer's traditional functions as counsel'") (quoting *Dodson*).

Under the reasoning of *Polk*, the City may not be held liable based on plaintiff's appellate attorney's failure to perfect plaintiff's appeal, because the attorney was not acting under color of state law, and "Section 1983 will not support a claim based on a respondeat superior theory of liability." *Polk*, 454 U.S. at 325. Hence, to the extent plaintiff's bases municipal liability on Burke's failure to perfect plaintiff's appeal, this claim must necessarily fail.

Accordingly, plaintiff has not and cannot adequately plead that New York City had a policy of failing to supervise court appointed private 18-b panel attorneys as that was not in the City's remit. It was the obligation of the various bar associations and the Appellate Divisions to supervise 18-b panel attorneys, and certainly it was the responsibility of the 18-b panel attorney to comply with the rules of professional conduct. Thus, plaintiff's amended complaint must be dismissed.

**B.     Plaintiff Fails To Adequately Plead That The City Acted With Deliberate Conduct Which Was The Moving Force Behind Any Of Plaintiffs Constitutional Violations**

Even if it is determined that a custom or policy of the City of New York existed of failing to supervise private court-appointed 18-b panel attorneys, plaintiff has not and cannot

adequately plead that the City acted with deliberate indifference which was the moving force behind plaintiff's constitutional violations.

While plaintiff cites to various articles, resolutions and court decisions in support of his allegation that the City was on notice of the problem, and therefore acted with deliberate indifference to it, none of the articles or court decisions cited to in the amended complaint support this position. In fact, the court decisions that he cites to places what amounts to deliberate conduct which was the moving force behind these constitutional violations on the state and the Appellate Division.

Plaintiff alleges that in 1982, the Bar of the City of New York, Committee on Criminal Advocacy, which included numerous experienced lawyers, judges, and law professors, was so horrified by the low quality of the representation, that they passed a resolution, finding that "the representation of indigent criminal defendants received inadequate assistance from *court-assigned private lawyers*." (Ex. B, ¶ 47) (emphasis added). Unequivocally, plaintiff admits that the City Bar Association believed the main problem was *their* inability to control the quality of representation provided by court-assigned, private 18-B panel attorneys. (Ex. B, ¶48) (emphasis added). The amended complaint is devoid of any suggestion that the Bar Association attributed to the inadequacy of representation to any deliberately indifferent conduct on the part of the City. In fact, plaintiff does not allege that a single article, resolution or case cited in the amended complaint attributes the poor quality of representation to any deliberate conduct by the City of New York—much less that any deliberate conduct of the City was the moving force behind the inadequacies of the representation of the *private* 18-b panel attorneys.

Plaintiff also alleges that defendant City of New York was aware of the serious concerns with the pattern of appellate division delays that had been brought by New York State

17

prisoners and cites to *Mathis v. Hood*, 1990 WL 100869 (SDNY 1990)), however, are nowhere in the amended complaint. (Ex. B, ⁋ 57). The findings of the Court in *Mathis v. Hood*. Specifically, in *Mathis* the Court found that the delay in perfecting the appeal in that case—by his court-appointed 18-b panel attorney was due to the Appellate Division's "haphazard management" of the appellate process. The Court determined that the responsibility for the delay rested *on the shoulders of the Appellate Division*, who failed to ensure the prompt preparation of trial transcripts, supervise its appointed attorneys, or monitor its calendar. *Mathis v. Hood*, at 8-9. (emphasis added). The Court went on to state that, "[i]n any event, the possibility that numerous such complaints will be filed, some of which may lead to assigned appellant counsel being replaced, is something not for this Court but for the Appellate Division to consider in its future supervision and administration of indigent criminal appeals." *Id.* at 22. There is simply no mention in *Mathis v. Hood* that any policy of the City caused the delay in perfecting the appeal in that case.

Similarly, plaintiff alleges that the City was on notice that the appeals system was in crises and had a duty to act, citing the decision in *Simmons v. Reynolds*, 898 F.2d 865, 868 (2d Cir. 1990). (Ex. B., ⁋ 58). However, *Simmons v. Reynolds* does not support plaintiff's claim. In *Simmons*, the court was tasked with deciding how to resolve an 18-b panel attorney's five-year delay in perfecting an appeal. In discussing the issue, the court attributed the plaintiff's loss of his due process rights to the "*dilatory conduct on the part of an appointed attorneys*." *Simmons*, 898 F.2d at 868 (emphasis added). The Court additionally noted the problematic actions of the *state*, stating: "despite having been advised of [the court appointed attorney's] delinquency, for five years the state never removed [the attorney] nor informed [defendant] he could have [the attorney] removed." *Id.* Like the articles and the *Mathis* decision cited in the amended

complaint, this court opinion does not indicate any deliberate indifference or culpable conduct on the part of the City. In fact, plaintiff fails to adequately allege that any of the cited articles and court decisions suggest that reform required action from the City. Rather, the cited documents and cases recommend reform required by bar associations, the state and the Appellate Division.

Here, not only has plaintiff failed to adequately plead that the City had a policy or custom of failing to supervise private, court-appointed 18-b panel attorneys, plaintiff has not and cannot plead any deliberate conduct of the City which was the moving force behind his alleged injury. While plaintiff's Sixth and Fourteen Amendment rights may have been violated, it was not because of any doing of the City of New York.

As this Court is aware, where there is no underlying constitutional violation, there can be no municipal liability. *See Caravalho v. City of New York*, 2016 U.S. Dist. LEXIS 44280, at *67 (S.D.N.Y. Mar. 31, 2016) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Here, there is no unconstitutional violation caused by the City of New York, thus there can be no municipal liability. Accordingly, for all of these reasons, the Court should grant defendant's motion dismissing the *Monell* claim and dismiss this action with prejudice.

## CONCLUSION

For the above reasons, the Court should grant defendant's motion on the pleadings dismissing all claims against the City with prejudice.

Dated:      New York, New York
                June 21, 2024

                                   MURIEL GOODE-TRUFANT
                                   Acting Corporation Counsel of the
                                      City of New York
                                   *Attorney for Defendant City of New York*
                                   100 Church Street
                                   New York, NY  10007
                                   (212) 356-3518
                                   arobinso@law.nyc.gov

                          By:     /s/ *Amy Robinson*
                                   AMY ROBINSON

20