UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE RODRIGUEZ,

                Plaintiff,

— against —

CITY OF NEW YORK,

                Defendant.

Case No. 23-cv-05531

**OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(C)**

# TABLE OF CONTENTS

*TABLE OF CONTENTS* ............................................................................................. *i*

*TABLE OF AUTHORITIES* ........................................................................................ *ii*

*STATEMENT OF FACTS* ............................................................. *Error! Bookmark not defined.*

*LEGAL ARGUMENT* ................................................................................................ 4

    I.    Legal Standard ............................................................................................. 4

    II.    The City's Statute of Limitations Argument Fails Under *Heck* .............................. 5

    III.    The Complaint States a Claim Under *Monell* ................................................. 6

    IV.    *Polk* does not foreclose this action ................................................................ 9

*CONCLUSION* ...................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

                                                                                                                                    Page(s)

*Bailey v. City of New York*,
   79 F. Supp. 3d 424 (E.D.N.Y. 2015) .................................................................. 7

*Bairefoot v. City of Beaufort*,
   312 F. Supp. 3d 503 (D.S.C. 2018) ................................................................. 12

*Clay v. Friedman*,
   541 F. Supp. 500 (N.D. Ill. 1982) ................................................................... 13

*Gideon v. Wainwright*,
   372 U.S. 335 (1965) .......................................................................................... 4

*Gleeson v. Cnty. of Nassau,* No. 15-CV-6487,
   2019 U.S. Dist. LEXIS 170373 (E.D.N.Y. Sep. 30, 2019) ............................... 9

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
   6 F.4th 293 (2d Cir. 2021) ................................................................................ 6

*Mathis v. Hood,* No. 87 Civ. 6234,
   1990 U.S. Dist. LEXIS 8474 (S.D.N.Y. July 10, 1990) ........................... 10,11

*McDonough v. Smith*,
   588 U.S. 109 (2019) .......................................................................................... 8

*Miranda v. Clark County*,
   319 F.3d 465 (9th Cir. 2003) .......................................................................... 13

*Polk Cnty. v. Dodson*,
   454 U.S. 312 (1981) ........................................................................................ 11

*Reynolds v. Giuliani*,
   506 F.3d 183 (2d Cir. 2007) ............................................................................. 8

*Simmons v. Reynolds*,
   898 F.2d 865 (2d. Cir. 1990) .......................................................................... 10

*Tylena M. v. Heartshare Children's Servs.*,
   390 F. Supp. 2d 296 (S.D.N.Y. 2005) .............................................................. 8

*Vann v. City of New York*,
    72 F.3d 1040, 1049 (2d Cir. 1995) ..............................................................................7,9

*Wiggins v. Mellia*, No. 14-cv-591,
    2023 WL 6222303 (2d Cir. Sept. 26, 2023) ...................................................... 8

*Wilbur v. City of Mount Vernon*,
    989 F. Supp. 2d 1122 (W.D. Wash. 2013) ................................................... 13

**Statutes**

County Law § 722 ............................................................................................... 4,9

42 U.S.C. § 1983 ................................................................................... 8,10,11,12

**Rules**

Federal Rule of Civil Procedure 12(c) ........................................................ 1,6,7

Federal Rule of Civil Procedure 15.................................................................11

**Other**

United States Constitution Amendment VI ................................................... 4

**STATEMENT OF FACTS**

Plaintiff was wrongfully convicted of murder on April 2, 1982, on two counts of attempted murder. (Compl. ¶ 12.) He was sentenced to twenty years to life on April 21, 1982. (¶ 14.) Because of the time that has passed since his conviction, the record is incomplete, but the partial record demonstrates that Mr. Rodriguez's trial counsel, despite only practicing for two years at the time he was appointed, fought for Mr. Rodriguez, lodged proper objections, and moved to dismiss the case for insufficient evidence for the underlying charges. (¶ 16.)

The notice of appeal was timely filed and Plaintiff was originally assigned William E. Hellerstein as appellate counsel, before being assigned Thomas P. Burke as appellate counsel, who was assigned to him as a lawyer on the "18-B panel" for assigned appellate counsel. (¶ 17.) Burke never took any steps to perfect his appeal. (¶20.) Plaintiff, who did not speak English, had been told he would be informed if his appeal was successful. He never heard from Burke and assumed the appeal had failed. (¶ 21.)

In fact, Burke did not perfect appeals for the majority of his assigned cases. (¶ 22.) In or around 2004, Burke was formally suspended for his delinquency in perfecting appeals. (¶ 23.) In 2006, he was investigated by the ethics committee. (¶ 24.) In 2008, he was suspended from the practice of law and disbarred (¶ 25.) It was not until 2014, when a fellow inmate attempted to help Plaintiff locate his appeal, that he became aware of this gross injustice. (¶ 28.)

On April 16, 2014, he filed a *pro se coram nobis* petition. (¶ 28.) This petition was opposed based upon mistaken records indicating his appeal had been perfected, until finally an investigation by the Attorney General's office revealed Mr. Rodriguez had in fact never had his appeal perfected. (¶¶ 29-34.)

Mr. Rodriguez was finally able to bring his appeal in February 2017, which was opposed by the District Attorney's Office. (¶ 34-35.) Finally, on November 9, 2021, it was determined that Mr. Rodriguez was deprived of his right to a meaningful appeal. (¶ 36.) On February 2, 2022, the application for leave to appeal to the New York Court of Appeals by the District Attorney's Office was denied, and Mr. Rodriguez's claim accrued. (¶ 37.)

Mr. Rodriuez's lengthy incarceration was a result of the gross violation of the Sixth Amendment to the United States Constitution and New York State law, which guaranteed him the right to appellate counsel.

The duty to provide him with appellate counsel belonged to the City of New York under New York state law. Following the Supreme Court's decision in *Gideon v. Wainwright*, 372 U.S. 335 (1965), New York State County Law § 722 required counties and the City of New York to create systems providing for indigent defense. (¶ 51.) The New York City Plan provided for institutional defenders and a Panel of private attorneys to represent indigent defendants in certain crimes and in multi-defendant cases. (*Id.*)

The City of New York elected to comply with its duty using a combination plan under County Law §722(4). By Executive Order No. 178 of 1965, then Mayor

2

Robert Wagner created the Indigent Defense Plan (the "Plan") which delegated the duty to provide indigent defense to the Legal Aid Society and, in cases where there was a conflict of interest, court appointed counsel from panels of attorneys maintained by plan administrators appointed by the First and Second Judicial Departments of the First and Second Department. *See* "Plan of the Association of the Bar of the City of New York, Bronx County Bar Association, Brooklyn County Bar Association, Brooklyn Bar Association, New York County Lawyers' Association, Queens County Bar Association and Richmond County Bar Association Adopted Pursuant to Article 18B of the County Law".[1] The City of New York paid 18-B attorneys. (*See* Def.'s Mem. At p. 7.)

        The failures of the Plan and the City of New York's failures in guaranteeing the right to counsel through the 18-B Panel were evident for decades. In 1982, the Bar of the City of New York, Committee on Criminal Advocacy "charged that the representation of indigent criminal defendants received inadequate assistance from court-assigned private lawyers." *See*, *e.g.*, Association of the Bar of the City of New York, Committee on Criminal Advocacy, Resolution (June 9, 1982) [hereinafter 1982 Criminal Advocacy Resolution]. (¶ 53.) The City Bar Association believed the main problem to be their inability to control the quality of representation provided by court-assigned, private "18-B Panel attorneys." The Study of Court-Appointed Lawyers, N.Y. Times, July 22, 1984, at 28, col. 1. STUDY OF COURT-APPOINTED LAWYERS TO BEGIN - The New York Times (nytimes.com). That study became the subject of an NYU Journal of Social Change article by Chester Mirsky and Michael McConville. (¶

---

[1] https://www.nycourts.gov/courts/ad2/pdf/Attachment%20A%20-%20Bar%20Assn%20Plan%20for%20NYC%20Assigned%20Counsel.pdf

54.) The study found that the Panel typically approved attorneys with no interview, (¶55.) and there was an "absence of any effective control over the quality of representation provided by the panel." (*Id.*)

Numerous hearings were conducted by the City Bar Association's Criminal Advocacy Committee. (¶ 57.) The Committee held hearings at which representatives of the City of New York, the Legal Aid Society, the Criminal and Supreme courts, and other interested groups were invited to share their views with the Committee and with Professors McConville and Mirsky. (¶ 58.) The City of New York was well aware of the failures of its Plan and, in particular, of 18-B attorneys to provide adequate appellate representation. (¶44, ¶63.) Still, despite their awareness of the Plan's failure to guarantee indigent New Yorkers with the right to counsel, the City failed to take action to enhance supervision measures or provide substitute counsel to those individuals who were represented by counsel known to be inadequate.

The failure of the Plan and the City's supervision is evidenced by the fact that even after Burke was disbarred, Mr. Rodriguez and other people represented by him, were not informed of his failures or to ensure that those who were failed by him and attorneys like him received adequate counsel. (¶ 67.)

## LEGAL ARGUMENT

### I. Legal Standard

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (citing

*Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)). "To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citing *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief . . . calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal conduct." *Id.* (citing *Lynch*, 952 F.3d at 75). "In making this assessment, we 'draw all reasonable inferences in [the plaintiff's] favor.'" *Id.* (citing *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)).

## II. The City's Statute of Limitations Argument Fails Under *Heck*

The City's primary argument—that Mr. Rodriguez's claim was filed too late—is squarely defeated by the Supreme Court's ruling in *Heck v. Humphrey*, and decades of precedent after. 512 U.S. 477 (1994). Under *Heck*, the "accrual date" of the statute of limitations "is delayed until the conviction is set aside." *Bailey v. City of New York*, 79 F. Supp. 3d 424, 447 (E.D.N.Y. 2015). If the claim would have been barred by *Heck* before the conviction or sentence was overturned, the statute of limitations does not run.

Any due process claim challenging the time Rodriguez spent in prison, for any reason, would have been barred under *Heck* because the rule has been interpreted so broadly. Most recently, in the due process case *McDonough v. Smith*, the Supreme Court emphasized the concerned raised by "parallel litigation and conflicting judgments" and reiterated that, under *Heck*, "'in order to recover damages for allegedly

5

unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,' a plaintiff in a § 1983 action first had to prove that his conviction had been invalidated in some way." *McDonough v. Smith*, 588 U.S. 109, 119 (2019) (quoting *Heck*, 512 U.S. at 486); *see also Wiggins v. Mellia*, No. 14-cv-591, 2023 WL 6222303, at *1 (2d Cir. Sept. 26, 2023) (dismissing case because the plaintiff had "not shown that the confinement was declared invalid, reversed, or called into question, as required by Heck"). Accordingly, any statute of limitations argument must be rejected, as Plaintiff's claim did not accrue until February 2, 2022, when Plaintiff's criminal conviction was vacated and the District Attorney's request to appeal that determination was denied. (¶ 36-37.)

### III. The Complaint States a Claim Under *Monell*

*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions. *Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007)* citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

When a municipality delegates responsibility for the provision of "services to private entities, this delegation does not absolve the City of its ultimate responsibility to ensure" that its constitutional responsibilities are met. *Tylena M. v. Heartshare Children's Servs.,* 390 F. Supp. 2d 296, 304 (S.D.N.Y. 2005) (quoting *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) ("Allowing delegation, without more, to defeat municipal liability would contravene the remedial purposes of

6

§ 1983."). "Although [the private entity] has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies or customs of the [the private entity]." *Covington v. Westchester County Jail*, No. 96 Civ. 7551, 1998 U.S. Dist. LEXIS 626, (S.D.N.Y. Jan. 26, 1998).

A failure to supervise "may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Gleeson v. Cnty. of Nassau*, No. 15-CV-6487 (AMD) (RL), 2019 U.S. Dist. LEXIS 170373, at *45-46 (E.D.N.Y. Sep. 30, 2019). To prevail on this theory, the plaintiffs must demonstrate that "the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Gleeson*, 2019 U.S. Dist. LEXIS 170373, at *46 (citing *Amnesty*, 361 F.3d at 126). To prove such deliberate indifference, "the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious … An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995).

Plaintiff has alleged such deliberate indifference. Plaintiff has alleged that the City of New York had the duty, pursuant to County Law § 722, to provide him with his Sixth Amendment right to counsel. (¶¶ 45, 59). The City then delegated that duty under the 1965 Plan. (*Id.*) The City was aware, to a moral certainty, that the Plan was failing to provide adequate appellate counsel to people convicted of crimes in New

7

York City. (¶¶46-47). The City heard in-depth reports that the Plan it had created was failing. (¶¶48-56). The City also heard from the Second Circuit, which expressed grave concerns about indigent prisoners, like Plaintiff, who were attempting to appeal their convictions with such ineffective counsel that it was as if they "had no counsel at all." (¶ 58 citing (*Simmons v. Reynolds*, 898 F.2d 865, 868 (2d Cir. 1990)). Plaintiff has also alleged that the City was fully aware that he was not represented by counsel in any legitimate sense on his appeal, as his 18-B assigned attorney was suspended in 2004 for his failure to provide clients, like Plaintiff, with appellate counsel, and he was ultimately disbarred in 2009. (¶ 60). In response, the City did nothing. (¶¶61, 62, 66-68.)

Indeed, Plaintiff referenced the Second Department's decision in *Simmons v. Reynolds*, 898 F.2d 865 (2d. Cir. 1990) in his complaint, as evidence of the Plan's ineffectiveness and the myriad ways the City was put on notice of such failures. (¶58). That the Second Circuit did not comment on the deliberate indifference or culpability of the City in its decision is unsurprising, given the issue in *Simmons* was whether Simmons should be granted *habeas corpus*, not whether he had successfully made out a claim under Section 1983[2]. Similarly, *Mathis v. Hood*, No. 87 Civ. 6234, 1990 U.S. Dist. LEXIS 8474, at *9 (S.D.N.Y. July 10, 1990) addressed the question of Mathis's right to release under *habeas corpus* after unconscionable delays in the appellate process delayed his appeal. (¶57.) *Mathis* highlights the failures of the delegated authority – the

---

[2] Though the district court granted leave for Simmons to amend his complaint to include a Section 1983 cause of action, and Simmons decided to file a separate complaint seeking relief on those grounds, the merits of that 1983 action were not considered on appeal. *Simmons*, 898 F.2d at 867.

8

Appellate Division – to do its job of supervising and managing the appellate process under the Plan, "The Appellate Division has also failed to supervise the Assigned Counsel Plan and failed to hold lawyers accountable for these delays. These defects in the appellate process have resulted in a disturbingly large number of *habeas corpus* petitions based on appellate delay being brought in Federal courts." *Id.* at *9, n.4. It is the City's failure to act in the face of *Simmons* and *Mathis*, and the numerous reports exposing the widespread failure of the Plan and the failure of the delegated authorities to adequately supervise and manage 18-B counsel, which reveal the City's deliberate indifference to the deprivation of rights under the Sixth Amendment.

The City cannot hide behind the fact that it delegated responsibility to the City Bar and the First and Second Judicial Departments under the Plan just as jail administrators cannot hide behind delegation to medical professionals. When a municipality is aware that its delegated plan for complying with constitutional requirements is failing, it "has a duty to investigate or to forestall further incidents." *Vann*, 72 F.3d at 1049.

### IV. *Polk* does not foreclose this action

The City's reliance on *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) is misplaced. *Polk* held that a public defender is not a state actor for the purposes of Section 1983. The holding is based on the independent judgment exercised by the public defender in the execution of his duties as an attorney. It is the "constitutional obligation of the State to respect to the professional independence of the public defenders whom it engages." *Id.* at 322. But Plaintiff has not alleged that Burke was a

9

state actor for the purposes of Section 1983. Plaintiff's claim arises due to the *inaction* of the City of New York in the face of clear evidence that the Plan to provide indigent defense was failing and lacked supervision.

Notably, *Polk itself entertained the question of whether the plaintiff had an actionable Monell claim.* After dismissing the claims against his public defense attorney, the Supreme Court wrote:

> The question is whether either allegation describes a constitutional tort actionable under § 1983. We conclude not. In *Monell v. New York City Dept. of Social Services*, supra, we held that official policy must be "the moving force of the constitutional violation" in order to establish the liability of a government body under § 1983. *Id.*, at 694. *See Rizzo v. Goode*, 423 U.S. 362, 370-377 (1976) (general allegation of administrative negligence fails to state a constitutional claim cognizable under § 1983). In this case the respondent failed to allege any policy that arguably violated his rights under the Sixth, Eighth, or Fourteenth Amendments. He did assert that assistant public defenders refused to prosecute certain appeals on grounds of their frivolity. But a policy of withdrawal from frivolous cases would not violate the Constitution. *Anders v. California*, 386 U.S. 738 (1967). And respondent argued the existence of no impermissible policy pursuant to which the withdrawals might have occurred. Respondent further asserted that he personally was deprived of a Sixth Amendment right to effective counsel. Again, however, he failed to allege that this deprivation was caused by any constitutionally forbidden rule or procedure.

While the plaintiff in *Polk*, a *pro se* litigant, did not allege the existence of a municipal policy, nothing in *Polk* foreclosed the possibility that if a municipality adopted a policy that caused the deprivation of Sixth Amendment rights it would be liable under *Monell*.

Numerous courts have, accordingly, held that failure to provide indigent criminal defendants with counsel is a violation of the Sixth Amendment. *See e.g. Bairefoot v. City of Beaufort*, 312 F. Supp. 3d 503, 512 (D.S.C. 2018) *(*"Here, it was foreseeable that Defendants' failure to provide for indigent defense in courts of their

own creation, as required by state law, would result in a violation of the Sixth

Amendment"); *Wilbur v. City of Mount Vernon*, 989 F. Supp. 2d 1122, 1133 (W.D. Wash.

2013*)* ("The Court finds that the combination of contracting, funding, legislating, and

monitoring decisions made by the policymaking authorities for the Cities directly

caused the truncated case handling procedures that have deprived indigent criminal

defendants in Mount Vernon and Burlington of private attorney/client consultation,

reasonable investigation and advocacy, and the adversarial testing of the prosecutor's

case. The Cities are therefore liable under § 1983 for the systemic Sixth Amendment

violation proved by plaintiffs."); *Miranda v. Clark County*, 319 F.3d 465 (9th Cir. 2003)

(finding that county could be liable for constitutional deprivations arising from funding

and case assignment policies); *Clay v. Friedman*, 541 F. Supp. 500, 502, 505-06 (N.D. Ill.

1982) (finding that administrative head of public defender's office could be liable for

non-representative decision-making and that county could be liable for promulgating

policies and customs that led to the constitutional deprivation).

    Where the City of New York's complete failure to provide adequate indigent defense through its Plan led to Plaintiff's 40-year incarceration, the City may be held liable for its failures under *Monell*. Additionally, if the Court ultimately agrees with Defendant regarding the sufficiency of the allegations on the *Monell* claim, the Plaintiff should be given the opportunity to replead in response to the Court's determination on the sufficiency of the allegations as leave to replead should be "freely granted" pursuant to Federal Rule of Civil Procedure 15.

## **CONCLUSION**

Because Plaintiff plausibly alleges a municipal policy caused his decades long incarceration, the City's motion must be denied.

DATED: July 8, 2024
New York, NY

WERTHEIMER LLC

By: _____
Joel A. Wertheimer
14 Wall Street, Suite 1603
New York, NY 10005
(646) 720-1098
joel@joelwertheimer.com

Robert H. Rickner
Rickner PLLC
14 Wall Street, Suite 1603
New York, NY 10005
rob@ricknerpllc.com