**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
JOSE RODRIGUEZ,                                         :
                                                       :
                             Plaintiff,                :        23-CV-5531 (LAK) (OTW)
                                                       :
                      -against-                        :        **REPORT & RECOMMENDATION TO**
                                                       :        **THE HON. LEWIS A. KAPLAN**
THE CITY OF NEW YORK,                                   :
                                                       :
                             Defendant.                :
-----------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge**:

I.    **INTRODUCTION**

Jose Rodriguez ("Plaintiff or "Mr. Rodriguez"), a Cuban refugee who spoke no English,

spent four decades in prison until the Appellate Division, First Department, dismissed the

charges against him, upon a finding that the City of New York (the "City" or "Defendant")

violated his Sixth and Fourteenth Amendment Rights to a speedy appeal based on the abject

failure of his appointed appellate counsel to take any "steps to perfect an appeal, to ask to be

relieved, or to communicate with" Plaintiff.  *People v. Rodriguez*, 199 A.D.3d 469, 470 (1st Dept.

2021).  After the Appellate Division dismissed the indictment, Plaintiff brought claims under

42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), seeking redress for the

City's violation of his constitutional rights*.*

The City moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), arguing,

in essence: (1) that Mr. Rodriguez's Section 1983 claims are time-barred because he should

have filed his claim within three years of his discovery—"with help from a fellow inmate"—that

his appeal had never been perfected; and (2) that his *Monell* claim pleads only "a single incident

of ineffective assistance" (his own) and does not plead the City's supervisory liability.  For the

following reasons, I respectfully recommend that Defendant's motion for judgment on the pleadings be **DENIED**.

## II.    BACKGROUND

### A.    Factual History

The factual history is derived from Plaintiff's First Amended Complaint (the "Amended Complaint") at ECF 21, documents incorporated into the Amended Complaint by reference, and court documents relating to Mr. Rodriguez's appeal of his conviction.[1]

#### 1.    Plaintiff's Conviction and Appeal

On April 2, 1982, Mr. Rodriguez was convicted by a jury in New York State Supreme Court, New York County, on two counts of attempted first-degree murder and one count of second-degree criminal possession of a weapon.  (ECF 21 at ¶ 12).  *See also Rodriguez*, 199 A.D.3d at 469.  On April 21, 1982, Mr. Rodriguez was sentenced to twenty years to life in prison.[2]  (ECF 21 at ¶ 14).  *Rodriguez*, 199 A.D.3d at 469.  Mr. Rodriguez's appointed trial counsel timely filed a Notice of Appeal.  (ECF 21 at ¶ 18).

Mr. Rodriguez's appeal was originally assigned to William E. Hellerstein, an attorney from New York's 18-b Panel system, which was, at the time, the method by which indigent

---

[1] When deciding a Rule 12(c) motion, a court may properly consider: (1) the complaint; (2) written documents attached to the complaint; (3) documents incorporated into the complaint by reference or integral to the complaint, provided their authenticity, accuracy, and relevance is not disputed; and (4) matters of which judicial notice may be taken.  *Thyssenkrupp Materials NA, Inc. v. M/V Kacey*, 236 F. Supp. 3d 835, 838 (S.D.N.Y. 2017) (citing *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).  Courts may take judicial notice of documents filed in other courts to establish the fact of such litigation and related filings.  *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).

[2] The Amended Complaint alleges that the sentencing minutes indicated that Mr. Rodriguez needed psychiatric treatment, which, despite the State Court's urging, was never given to him.  (ECF 21 at ¶ 15).

defendants were provided trial and appellate counsel. *See infra* § II.A.2. (ECF 21 at ¶ 18). On

or around February 24, 1983, his appeal was reassigned to Thomas P. Burke, another 18-b Panel

attorney, and his time to perfect his appeal was extended by 120 days. (ECF 21 at ¶ 18). At

that time, the Appeals Bureau for the New York County District Attorney's Office retained "file

cards" reflecting appointments of counsel. (ECF 21 at ¶ 19). Mr. Rodriguez's file card correctly

reflected that Mr. Burke had been assigned to his appeal. (ECF 21 at ¶ 19). But the file card

also incorrectly stated that Mr. Rodriguez's conviction had already been affirmed on

May 17, 1983, under appeal number 16790—an appeal for another individual also named "Jose

Rodriguez," who had been charged with different crimes, tried before a different judge, and

assigned different appellate counsel. (ECF 21 at ¶ 19). Plaintiff asserts here that "no

reasonable person would support the conclusion" that these were the same men. (ECF 21 at

¶ 20). Mr. Burke never took any steps to proceed with Mr. Rodriguez's appeal. (ECF 21 at

¶ 21). Mr. Rodriguez's trial counsel had told him that his appellate counsel would inform him if

his appeal was successful. (ECF 21 at ¶ 22). Hearing nothing from Mr. Burke, Mr. Rodriguez

assumed that his appeal had failed. (ECF 21 at ¶ 22).

In approximately 2004, Mr. Burke was formally suspended from the 18-b Panel

specifically for delinquency in perfecting the appeals assigned to him. (ECF 21 at ¶¶ 23, 60). In

2006, he was investigated by the Disciplinary Committee. (ECF 21 at ¶ 24). In 2008, he was

suspended from the practice of law for neglecting his duties. (ECF 21 at ¶ 25). In 2009, he was

finally disbarred. (ECF 21 at ¶¶ 25, 60).[3] In the intervening years, the City apparently never

---

[3] Mr. Burke has since died. (ECF 21 at ¶ 26).

bothered to contact Mr. Burke's clients, investigate the status of Mr. Burke's appeals, or otherwise follow up on Mr. Rodriguez's case, either to ascertain whether his appeal had in fact been perfected or to provide him with new appellate counsel.  (ECF 21 at ¶ 61).

In 2014, a fellow inmate discovered that Mr. Rodriguez's appeal had never been perfected.  (ECF 21 at ¶ 28).  On April 16, 2014, Mr. Rodriguez filed a *coram nobis* petition, *pro se*, in New York State Supreme Court.  (ECF 21 at ¶ 28).  Rather than investigating independently, the State opposed the petition, and submitted a supporting affirmation attesting that Plaintiff's appeal had been perfected and referring to the file card from the New York County District Attorney's Office belonging to the other "Jose Rodriguez."  (ECF 21 at ¶ 29).  On August 14, 2014, Defendant actually admitted that its own records did not reflect that Plaintiff's appeal had been perfected, but nevertheless referred the State Court to the affirmation of the conviction of the other "Jose Rodriguez."  (ECF 21 at ¶ 30).  Although Plaintiff explained that the State was referencing the wrong "Jose Rodriguez," the State Court denied his petition on November 13, 2014, relying on the District Attorney's representation that the two Messrs. Rodriguez were the same man.  (ECF 21 at ¶¶ 31–32).  Mr. Rodriguez sought leave to appeal on November 26, 2014, which the State opposed, and which leave was denied on June 29, 2015.  (ECF 21 at ¶ 33).

In or around 2016 and 2017, the New York State Attorney General's Office conducted an independent investigation which revealed that Mr. Rodriguez's appeal had in fact never been perfected.  (ECF 21 at ¶ 34).  Consequently, on February 16, 2017, the State Court recalled and vacated its order denying Mr. Rodriguez's *coram nobis* petition.  (ECF 21 at ¶ 34).  Even then,

the District Attorney's Office cross-moved to dismiss Mr. Rodriguez's appeal as untimely.  (ECF 21 at ¶ 35).

On November 9, 2021, the Appellate Division, First Department, issued a decision finding that, as a matter of law, Mr. Rodriguez had been deprived of his right to an appeal.  (ECF 21 at ¶ 36); *Rodriguez*, 199 A.D.3d at 470.  Specifically, the First Department held that Mr. Rodriguez "was deprived of his right to a speedy appeal, and that . . . no effective remedy is available except dismissal of this 40 year old indictment."  *Id.*  The First Department also found that no significant portion of the delay in perfecting Mr. Rodriguez's appeal was attributable to Mr. Rodriguez's own alleged failure to pursue such appeal.  *Id.*  Under the "extraordinary circumstances," the prejudice to Mr. Rodriguez was "apparent," and dismissal of the charges against him "warranted."  *Id.*

On February 2, 2022, the Court of Appeals denied the City leave to appeal the First Department's decision.  (ECF 21 at ¶ 37).

All told, Mr. Rodriguez was incarcerated for nearly forty years.  (ECF 21 at ¶¶ 1, 38).

**2.  The History of New York City's 18-b Panel**

In 1965, New York City determined to comply with its obligations to provide indigent criminal defense by establishing the Indigent Defense Plan (the "Plan").  (ECF 21 at ¶¶ 44–45).  *See* U.S. Const. am. 6, 14; *Gideon v. Wainwright*, 372 U.S. 335 (1965); N.Y. County Law § 722 ("Article 18-b").  Under the Plan, which the City adopted in 1966, the City delegated the duty to provide indigent defense to a combination of institutional public defenders, such as the Legal Aid Society, and panels of private attorneys (the "18-b Panels") maintained by the Plan's administrators, who were in turn appointed by the Appellate Divisions of the First and Second

Departments. (ECF 21 at ¶¶ 44–45). *See generally* N.Y. County Law § 722. The Plan administrators did not train or supervise 18-b Panel attorneys, and did not track, measure, audit, or otherwise review their work. (ECF 21 at ¶¶ 42, 65–68). *But see* N.Y. Comp. Codes R. & Regs. 22 § 612.8 (providing that "the bar associations shall, after consultation with the Appellate Division and the administrator of the [Plan], provide a continuing program of training and education.").

The Amended Complaint offers a brief history of concerns raised about the Plan, beginning in the 1980s and reaching into the 2000s, which Plaintiff alleges bear on his case. By the early 1980s, the Plan had garnered scrutiny and criticism from the New York City Bar, the press, and the legal academy. (*See* ECF 21 at ¶¶ 46–56). In 1982, the Bar's Committee on Criminal Advocacy passed a resolution finding that the 18-b Panel attorneys' representation of indigent defendants was inadequate, and that the City lacked sufficient control over the quality of 18-b Panel attorneys. (ECF 21 at ¶¶ 47–48).[4] One 1984 New York Times article referenced in the Amended Complaint notes that the 18-b Panel "usually approves candidates without an interview," and that the City Bar Association had raised concerns that there was "an absence of any effective control over the quality of representation" provided by 18-b Panel attorneys. (ECF 21 at ¶ 49).[5]

In 1984, the City Bar commissioned a Report on the 18-b Panel system, which "sought to provide an overview of New York City's indigent defense system," including "demographic data

---

[4] *See* "Association of the Bar of the City of New York, Committee on Criminal Advocacy, Resolution," June 9, 1982.

[5] *See* Philip Shenon, "Study of Court-Appointed Lawyers to Begin," N.Y. Times, July 22, 1984, at A28.

on the characteristics of 18-B Panel attorneys" and "the quality of representation afforded indigent defendants." (ECF 21 at ¶¶ 50–51).[6]  To prepare the Report, the City Bar hosted a series of hearings at which representatives from the City, the Legal Aid Society, and the Criminal and Civil Terms of the New York Supreme Court, were invited to share their views. (ECF 21 at ¶ 52).  The Report, finalized in 1985, proposed reorganization of the 18-b Panel. (ECF 21 at ¶ 53).  A year later, following further supplemental reports and recommendations, the City Bar Association released an action report calling for replacing the 18-b Panel altogether with a mid-range contract defender. (ECF 21 at ¶¶ 54–56).[7]

The Amended Complaint also identifies two 1990 federal court opinions, in which the Second Circuit and the Southern District of New York each found that the state courts had failed to supervise appointed attorneys and thereby caused delays in perfecting the respective plaintiffs' appeals. (ECF 21 at ¶¶ 57–58).  *See Simmons v. Reynold*, 898 F.2d 865, 868 (2d Cir. 1990) (affirming *habeas* relief for a six-year delay); *Mathis v. Hood*, 87-CV-6234 (RPP), 1990 WL 100869, at *2–4, n.4 (S.D.N.Y. 1990) (granting *habeas* relief for a six-year delay).  In March 2001, the First Department's Committee on Legal Representation of the Poor issued a report

---

[6] *See* Michael McConville & Chester L. Mirsky *Criminal Defense of the Poor in New York City*, 15 N.Y.U. Rev. L. & Soc. Change 903 (1986–1987).

[7] *See* Ass'n of the B. of the City of N.Y., Comm. on Crim. Advoc., Report of the Ass'n of the Bar of the City of New York Committee on Criminal Advocacy, A System in Crisis: The Assigned Counsel Plan in New York: An Evaluation and Recommendations for Change, 15 N.Y.U. Rev. L. & Soc. Change 903, 943–964 app. (1986)).

stating that "the entire system by which poor people are provided legal representation is in crisis."  (ECF 21 at ¶ 64).[8]

In 2010, the Mayor's Office issued an Executive Order establishing the Office of the Assigned Counsel Plan to oversee 18-b Panel representation.  (ECF 21 at ¶ 69).[9]

### B.  Procedural History

Mr. Rodriguez initiated this action in New York State Court on May 2, 2023.  (ECF 1). The case was removed to the Southern District of New York on June 28, 2023.  (ECF 1).  Judge Kaplan referred the case to me both for general pretrial management and for all dispositive motions requiring a report and recommendation.  (ECF 4).

Mr. Rodriguez amended his complaint under Fed. R. Civ. P. 15(a)(1) on December 8, 2023, rendering the Amended Complaint the operative complaint.  (ECF 21).  The Amended Complaint named only the City of New York as a defendant.  (*See generally* ECF 21). The parties subsequently filed a stipulation (ECF Nos. 24, 25) and a motion (ECF 32) purporting to dismiss certain defendants that had been named in the initial complaint but not in the Amended Complaint.  (ECF Nos. 24, 25, 32).  Thus, the first motion to dismiss the complaint, filed on March 14, 2024, was already moot when filed, and continues to be moot in light of the parties' expressed intent that all the defendants besides the City should have been dismissed with prejudice.  (*See* ECF Nos. 40, 41).

---

[8] *See* Appellate Division, First Department, Committee on Legal Representation of the Poor, "Crisis in the Legal Representation of the Poor: Recommendations for a Revised Plan to Implement Mandated Governmentally Funded Legal Representation of Persons Who Cannot Afford Counsel" (2001).

[9] *See* Exec. Order No. 132, "Indigent Defense Plan for the City of New York," March 2, 2010.

On March 14, 2024, the City answered the Amended Complaint.  (ECF 33).  At a status conference on May 9, 2024, the City indicated that, notwithstanding having answered, they contemplated filing a motion to dismiss.  (ECF 41 at 2:2–6:2).  (*See also* ECF 40).  The City moved for judgment on the pleadings under Fed. R. Civ. P. 12(c) on June 21, 2024, and the motion was fully briefed on July 15, 2024.  (ECF Nos. 45, 46, 47, 53, 54).

## III.    DISCUSSION

The standard for granting a motion for judgment on the pleadings under Rule 12(c) is "identical" to that for granting a motion for failure to state a claim under Rule 12(b)(6).  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021).  To survive a Rule 12(c) motion, a plaintiff's complaint must include "sufficient factual matter" such that, if it is accepted as true, it "state[s] a claim to relief that is plausible on its face."  *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  A claim is facially plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  When assessing a complaint under Rule 12(c), courts draw all reasonable inferences in the plaintiff's favor and accept all well-pleaded factual allegations as true. *Hayden*, 594 F.3d at 160.  *See Lynch*, 952 F.3d at 74–75 (citing *Iqbal*, 556 U.S. at 679).  Where the parties dispute a question of fact, judgment on the pleadings is inappropriate.  *Lively*, 6 F.4th at 301–302 (citing *Sheppard v. Beerman*, 18 F.3d 147, 151 (2d Cir. 1994)).

Mr. Rodriguez brings two claims under 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs.* 436 U.S. 658 (1978).  First, he alleges that the City deprived him of his right to adequate appellate counsel, in violation of his Sixth and Fourteenth Amendment rights.  (ECF 21 at

¶¶ 79–82).  Second and separately, he alleges that the City deprived him of his right to due

process, by failing to provide adequate appellate counsel, in violation of the Fourteenth

Amendment.  (ECF 21 at ¶¶ 83–87).  The City moves for judgment on the pleadings on two

grounds.  First, the City argues that Mr. Rodriguez's claims are time-barred.  (ECF 47 at 11).

Second, the City argues that Mr. Rodriguez has failed to adequately plead a claim under *Monell*.

(ECF 47 at 12).

 For the following reasons, I respectfully recommend that the City's motion be denied.

**A.  <u>Mr. Rodriguez's Claims Are Not Time Barred</u>**

 Ordinarily, a Section 1983 claim brought for an injury to personal rights is subject to

New York State's analogous three-year statute of limitations, which begins to run when a

putative plaintiff knows or has reason to know of the injury that might form the basis of an

action.  *See Owens v. Okure*, 488 U.S. 235, 239–42 (1989).  A Section 1983 claim does not arise

while state challenges are being pursued, and so the statute of limitations does not begin to

run.  *Heck v. Humphrey*, 512 U.S. 477, 489 (1994).  In *Heck v. Humphrey*, however, the Supreme

Court addressed the potential for disagreement between Section 1983 claims and the federal

*habeas corpus* statute.  *Id.* at 489–90.  In reconciling the two, the Court ruled that:

> [I]n order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a [Section] 1983 plaintiff must prove that
> the conviction or sentence has been reversed on direct appeal, expunged by
> executive order, declared invalid by a state tribunal authorized to make such
> determination, or called into question by a federal court's issuance of a writ of
> *habeas corpus*[.]

*Id.* at 486–87.  This bar partly arises from "pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter" and the "the possibility of conflicting civil and criminal judgments."  *McDonough v. Smith*, 588 U.S. 109, 117–18 (2019).

A "favorable-termination requirement" thus applies when a person incarcerated under state law files a Section 1983 that implies the invalidity of his conviction or sentence.  *Id.* at 119 (citing *Heck*, 512 U.S. at 487).  If such a plaintiff does not fulfill the favorable-termination requirement by demonstrating that his conviction or sentence has already been invalidated, then the complaint must be dismissed.  *Heck*, 512 U.S. at 487.  Contrariwise, if the district court finds that the plaintiff's Section 1983 suit, "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed" absent other bars.  *Id.*

"[T]he Second Circuit has explained that a ruling in Plaintiff's favor on counts which raise questions about [his] Sixth Amendment right to counsel [] implicate[s] the validity of his conviction."  *Fullewellen v. City of New York*, 21-CV-7219 (MKV), 2023 WL 2390551, at *4 (S.D.N.Y. 2023) (dismissing plaintiff's Section 1983 claim for deprivation of right to counsel as "implicating the validity of his conviction," and because plaintiff did not allege that his conviction or sentence was reversed, expunged, declared invalid, or otherwise called into question) (quoting *Zarro v. Spitzer*, 274 F. App'x 31, 34–35 (2d Cir. 2008) (internal quotation marks omitted)).  *See D.S. v. City of New York*, 736 F. App'x 284, 287 (2d Cir. 2018) ("[A]sserting that D.S. was . . . denied effective counsel in violation of constitutional rights advanced under [Section] 1983 necessarily implies that his assault conviction was unlawfully obtained.").  *See also Burris v. Nassau Cnty. Dist. Att'y*, 14-CV-5540 (JFB) (GRB), 2017 WL 9485714, at *9 (E.D.N.Y.

2017), *rep. & rec. adopted*, at 14-CV-5540 (JFB) (GRB), 2017 WL 1187709 (E.D.N.Y. 2017) (citing cases) ("Clearly, the gist of plaintiff's claims challenges his conviction—he was denied a fair trial and thereby was convicted based on false evidence and ineffective assistance of counsel. . . . [B]ecause plaintiff's Section 1983 claims implicate the validity of his conviction, the claim falls squarely within the ambit of *Heck* and is barred.").

Mr. Rodriguez's claims are not time-barred because under *Heck* he could only have brought his Section 1983 claim when his "conviction was declared invalid by a state tribunal authorized to make such determination"—in other words, when the Court of Appeals denied leave to appeal the First Department's decision overturning his 1982 conviction, on February 2, 2022. Because his appellate counsel failed to perfect his appeal, Mr. Rodriguez could not otherwise practically comply with *Heck*. He could not have shown that "his conviction [was] reversed on direct appeal," or that it had been "called into question by a federal court's issuance of a writ of *habeas corpus*." *Heck*, 512 U.S. at 486–87. The City asserts, without support and in the face of case law to the contrary, that Plaintiff's 1983 claim accrued in 2014, either when he first learned that his appeal had never been perfected, or when the State Court vacated its order regarding his *coram nobis* petition later that same year. (ECF 47 at 16). But if Mr. Rodriguez had filed his claim in 2014, he would have suffered the same fate as the plaintiff in *Fullewellen*: dismissal. *See Fullewellen*, 2023 WL 2390551 at *3.[10]

---

[10] The City's argument implies that Mr. Rodriguez did not have to fulfill *Heck*'s favorable-termination requirement, and thus that *Heck* does not apply. (ECF Nos. 47 at 16, 54 at 4–5). This is simply incorrect as a matter of law: Section 1983 claims challenging adequacy of counsel implicate a challenge to an underlying conviction. *See D.S.*, 736 F. App'x 284; *Zarro*, 274 F. App'x 31; *Fullewellen*, 2023 WL 2390551; *Burris*, 2017 WL 9485714 *rep. & rec. adopted* at 2017 WL 1187709.

Accordingly, I find that Mr. Rodriguez's claim accrued on February 2, 2022, when the Court of Appeals denied the State leave to appeal the First Department's decision dismissing the indictment against Mr. Rodriguez and overturning his conviction.  Mr. Rodriguez could not have brought this suit unless and until he had fulfilled one of the four prerequisites under *Heck*—that is, until his sentence had first been reversed (or, expunged, declared invalid, or otherwise called into question by a federal court's issuance of a writ of *habeas corpus*).  *See Heck*, 512 U.S. at 486–87.  None of the prior dates suggested by Defendant could have satisfied this prerequisite.  Because Mr. Rodriguez sued the City on May 2, 2023, just one year later, he was well within the applicable three-year statute of limitations under Section 1983, and his claims are not time-barred.

**B.  Mr. Rodriguez Meets the Pleading Standard Under *Monell***

Municipal liability under *Monell* attaches to a municipal policy or custom that causes a plaintiff to be subjected to a deprivation of a constitutional right.  436 U.S. 658; *Agosto v. New York City Dep't of Education*, 982 F.3d 86, 97 (2d Cir. 2020).  A plaintiff may assert "official municipal policy" or "custom" by alleging one or more of the following: (1) a formal policy; (2) an act or decision of a policymaking official; (3) a practice "so persistent and widespread so as to practically have the force of law;" or (4) the municipality's failure to train, screen, or supervise its employees.  *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks omitted).  A plaintiff must generally allege a "direct causal link" between the municipality's action and the deprivation of his own constitutional rights.  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

To state a claim for municipal liability under a failure to supervise theory, a plaintiff must plead that the local government failed to adequately supervise or discipline its employees, "thereby implicitly encouraging or ratifying their unlawful conduct," and that the failure of supervision or discipline was "tantamount to deliberate indifference." *Buari v. City of New York*, 530 F. Supp. 3d 356, 400 (S.D.N.Y. 2021) (quoting *Alwan v. City of New York*, 311 F. Supp. 3d 570, 578 (E.D.N.Y. 2022) (collecting cases)). A plaintiff pleading deliberate indifference must at least allege that "the need for more or better supervision to protect against constitutional violations was obvious." *Id.*; *Lehal v. Cent. Falls Det. Facility Corp.*, 13-CV-3923 (DF), 2016 WL 7377238, at *12 (S.D.N.Y. 2016) (collecting cases). A plaintiff may show "obvious need" by offering proof of repeated complaints of civil rights violations. *Buari*, 530 F. Supp. 3d at 400. A court may infer deliberate indifference where, following complaints, the municipality made "no meaningful attempt" "to investigate or to forestall further incidents." *Id.* (citing *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)). Such complaints need not have resulted in formal findings of misconduct to support a failure to supervise theory under *Monell*. *Felix v. City of New York*, 344 F. Supp. 3d 644, 662 (S.D.N.Y. 2018) (collecting cases). *See Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 328 (2d Cir. 1986) ("[T]hat none of the claims had yet been adjudicated in favor of the claimant was not material; if the City's efforts to evaluate the claims were so superficial as to suggest that its official attitude was one of indifference to the truth of the claim, such an attitude would bespeak an indifference to the rights asserted in those claims.").

Drawing all reasonable inferences in his favor, I find that Mr. Rodriguez has pleaded a *Monell* claim under a failure to supervise theory. First, Mr. Rodriguez has alleged the primary

14

elements of a *Monell* claim.  Namely, he alleges that New York City's failure to supervise 18-b

Panel attorneys performing appellate work caused the deprivation of his Sixth and Fourteenth

Amendment rights to effective appellate counsel and due process.  Mr. Rodriguez alleges a

causal relationship between the City's failures and his own injury by alleging that, had the City

properly supervised his 18-b attorney, the erroneous attribution of another man's appeal to his

case might have been prevented, or corrected—and Mr. Rodriguez might not have languished

for four decades in prison.[11]  Specifically, he properly pleads that the City failed to supervise the

18-b attorneys, to whom it had delegated its responsibility to represent indigent criminal

defendants.

Mr. Rodriguez also properly pleads that the City was deliberately indifferent in two

ways.  He has offered proof that the City was on notice as early as 1982 that failure to supervise

18-b Panel attorneys had caused and continued to cause violations of indigent defendants'

constitutional right to counsel.  The Court may here infer that the City was deliberately

indifferent because complaints from stakeholders continued, unabated and unaddressed, for

decades.  *See supra* at § II.A.2.  These complaints included numerous reports sounding the

alarm that the City had established no effective control over the quality of representation

---

[11] The City's reliance on *Polk Cnty. v. Dodson* to argue that it did not hold supervisory authority over 18-b Panel attorneys is unavailing.  454 U.S. 312, 321 (1981).  (*See* ECF Nos. 47 at 18–21, 54 at 5–7).  It is true that public defenders are "not amenable to administrative direction" as are other state employees.  *Polk Cnty.*, 454 U.S. at 321.  But *Polk* held "only that a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Id.* at 325.  First, Mr. Rodriguez does not assert a claim against *Mr. Burke* for ineffective assistance of counsel under Section 1983, but against *the City* for *failing to supervise Mr. Burke*.  (*See* ECF 53 at 9–10).  Second, *Polk* does not, as Defendant suggests, prohibit a city from devising a system for supervising private, court-appointed lawyers counseling indigent defendants.  Similarly, Defendant's assertion that the Appellate Division, First and Second Departments, had supervisory authority, not the City (ECF Nos. 47 at 18–19, 54 at 6) is an issue for discovery.

provided by 18-b Panel attorneys.  Additionally, in Mr. Rodriguez's specific case, even after his

18-b counsel had been (1) formally suspended from the Panel in 2004, specifically for

delinquency in perfecting appeals, (2) investigated by the Disciplinary Committee,

(3) suspended from practice, and (4) disbarred, the City neither investigated nor contacted Mr.

Rodriguez to investigate whether his appeal remained unperfected.[12]  (*See* ECF 21 at ¶¶ 23–25,

61).  By 2004 at the absolute latest, it should have been obvious to the City that more

supervision was needed to protect Mr. Rodriguez, and other indigent defendants like him,

against gross violations of their constitutionally protected rights.  *See Buari*, 530 F. Supp. 3d at

400.

## IV.    CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendant's motion for

judgment on the pleadings at ECF 45 be **DENIED** in its entirety.  Additionally, Defendant's first

motion to dismiss at ECF 32 should be **DENIED** as moot.

## V.    OBJECTIONS

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

fourteen (14) days (including weekends and holidays) from receipt of this Report to file written

objections.  *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail).  A

party may respond to any objections within fourteen (14) days after being served.  Such

objections, and any responses to objections, shall be addressed to the Honorable Lewis A.

---

[12] Moreover, it is unlikely that Mr. Burke's escalating discipline—ending with the extreme sanction of disbarment—was attributable solely to his mishandling of Plaintiff's case, further underscoring the need for discovery to understand the extent of and potential harms caused by the City's failure to supervise 18-b counsel.

Kaplan, United States District Judge.  Any requests for an extension of time for filing objections must be directed to Judge Kaplan.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.**  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir. 1983).

Respectfully submitted,

_____
*/s/ Ona T. Wang*

Dated: March 4, 2025                                    **Ona T. Wang**
    New York, New York                         United States Magistrate Judge